## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Freddie Lee Hall, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | 1:17cv602 (LMB/JFA) |
| | ) | |
| David Zook, | ) | |
|     Respondent. | ) | |

### MEMORANDUM OPINION

Freddie Lee Hall, a Virginia inmate proceeding pro se, has filed a petition for a writ of

habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction of

first-degree murder entered by the Circuit Court for the City of Portsmouth. Before the Court is

respondent's Motion to Dismiss the petition [Dkt. No. 12], to which petitioner has filed a reply.

[Dkt. No. 24].

### I. Background

Following a jury trial, Hall was convicted on August 5, 2013 and received a sentence of

life imprisonment. Case No. CR12-591-01; Resp. Ex. A. The Court of Appeals of Virginia

granted Hall's petition for appeal on the assignment of error that the trial court wrongfully

overruled his hearsay objection to a receipt from a gun shop; it denied the petition as to seven

additional assignments of error. Hall v. Commonwealth, R. No. 1626-13-1 (Va. Ct. App. Mar.

5, 2014); Resp. Ex. C. In a memorandum opinion issued on November 18, 2014, the Court of

Appeals affirmed Hall's conviction on the holding that the contested receipt for ammunition was

of "minimal evidential value" and that any error in its admission was non-constitutional and

harmless in light of the "massive evidence of [Hall's] guilt otherwise adduced." Hall v.

Commonwealth, R. No. 1626-13-1 (Va. Ct. App. Nov. 18, 2014), slip op. at 6. The remainder

of the petition for appeal was denied. Id. at 2. The Court of Appeals summarized the

evidence as follows:[1]

> [T]he evidence proved that James Britt was last seen on April 11, 2011. Several days later, the police reported to Britt's residence after his family and friends were unable to contact him. The police discovered Britt's house had been damaged and smelled of paint and bleach. Large pieces of carpeting had been cut out of the carpets in the bedroom and living room. The remaining carpet had white marks that appeared to be bleach stains and portions of the walls appeared to have been recently painted. Stains that appeared to be blood spatter were also on the walls and ceiling. Later testing confirmed that blood spatter on some of the walls and doors were beneath the fresh paint. Furniture inside the house had been moved. A trash bag in the garage contained pieces of Britt's teeth, a .9 millimeter FC Luger cartridge casing, Britt's blood-stained clothing, bottles of cleaning supplies, Britt's driver's license which had been cut in pieces, Britt's wallet, and a small slip of paper linked to a Florida company with which [Hall] was associated. A paint can bearing [Hall's] fingerprint was in the garage along with a piece of carpet padding with Britt's blood on it. Paint from the can was consistent with the fresh paint in the walls inside Britt's house. Britt's blood and [Hall's] fingerprints were also located inside the residence. A bullet matching the casing from the trash bag was embedded in Britt's bedroom wall and had been covered with putty. The police also found [Hall's] locked vehicle in Britt's driveway. Three of Britt's cars were missing from the property.

> Britt operated a car business and had worked with [Hall]. In the weeks prior to his disappearance, Britt had told his employees and friends that he no longer planned to work with [Hall] because [Hall] had done poor work and owed him money. Britt told the witnesses that he had informed [Hall] that he no longer wished to work with him. One witness testified he observed [Hall] and Britt engage in a heated argument soon before Britt's disappearance. . . .

> Days before Britt's disappearance, he told two witnesses . . . that [Hall] had arrived at his residence carrying a crowbar. . . .

---

[1]Because a federal court on habeas review of a state conviction must defer to findings of fact made by state trial and appellate courts, 28 U.S.C. § 2254(d), it is appropriate to look to the state court's recitation of the salient facts.

The police found a crowbar in a vehicle owned by [Hall]. The vehicle was located in Florida, where [Hall] lived, and one of Britt's neighbors had seen it at Britt's residence shortly before Britt's disappearance. The police also recovered from [Hall] numerous titles to cars owned by Britt. [Hall] claimed Britt had sold or given him the car titles. Names other than Britt's appeared as the seller on some of the titles. A handwriting expert testified [Hall] could not be eliminated as the author of the seller signatures on the titles. Two of Britt's cars were found at [Hall's] girlfriends' houses. At one of the residences, the police also found a piece of carpet on [Hall's] lawnmower. The carpet was damp and smelled of bleach. The fibers matched the carpet in Britt's residence.

Inside [Hall's] vehicle, which had been locked and parked on Britt's property, the police found a receipt for .9 millimeter FC Luger cartridges from a gun shop. . . . Although [Hall] denied ever owning a gun, his car contained ammunition and gun cleaning supplies.

[Hall] exhibited an injury to his forehead at an April 21, 2011 interview with the police. During the interview, [Hall] admitted having twice entered Britt's residence during the week of April 11, 2011. At first, he claimed several times that he had only gone through the garage to the kitchen to retrieve car keys. Later, however, after one of the detectives told [Hall] his DNA had been located in the living room, [Hall] told a different version of events which included his going into the living room to check for mail.

Pastor K. Irby testified [Hall] was enrolled in ministerial classes at his church in Florida during April 2011. Irby explained that on the weekend of April 8, 2011, [Hall] informed him that he would miss the following week's classes because 'he had been called up on military maneuvers.' Later, when he returned to class, [Hall] told Irby he had been in the Middle East. In fact, [Hall] had not gone to the Middle East and specifically misrepresented his whereabouts to his pastor.

Id., slip op. at 2-4, footnote omitted. Hall's attempt to appeal the foregoing decision to the

Supreme Court of Virginia was refused without opinion on June 23, 2015. Hall v.

Commonwealth, R. No. 141889 (Va. June 23, 2015); Resp. Ex. H.

On April 18, 2016, Hall timely filed a petition for a writ of habeas corpus in the Supreme

Court of Virginia, raising the following claims:

I. Trial counsel were ineffective for failing to: (A) read Halls' discovery page and present police property vouchers at trial; (B) present cell phone records; (C) perform police background checks; (D) present cell phone records and investigate the victim's location; (E) call a DMV expert as a witness; (F) present exculpatory evidence, the cumulative effect of which deprived Hall of effective assistance of counsel; (G) secure DNA and fingerprint analyses; and (H) investigate Hall's school schedule.

II. Trial counsel were ineffective for failing to convey the court's instructions regarding Hall's right to represent himself.

III. Trial counsel were ineffective for failing to object to and refute due process errors: (A) testimony that a crowbar was found in Hall's vehicle and he "changed his story," and inaccurate claims by the Commonwealth that certain automobiles belonged to the victim; (B) improper testimony as to DNA analysis of items found in the victim's home; (C) non-responsive answers by the victim's brother; and (D) testimony of a handwriting expert about Hall's samples.

IV. Trial counsel were ineffective for failing to: (A) call a DMV expert and object to or refute the Commonwealth's inaccurate claim that certain cars belonged to the victim and not Hall; and (B) request a Bill of Particulars specifying the date on which Hall killed the victim.

V. Newly-discovered evidence in the form of Hall's realization that the vehicle found at the crime scene was not his entitles him to relief.

VI. Trial counsel were ineffective for failing to prepare for sentencing by developing mitigating evidence regarding Hall's life prior to the murder.

Resp. Ex. I, Parts I - III.[2]    The Supreme Court of Virginia dismissed the petition on March 1,

2017.   Hall v. Warden, Sussex I State Prison, R. No. 160599 (Va. Mar. 1, 2017); Resp. Ex. J.

Hall then turned to the federal forum and timely filed this application for relief pursuant

to § 2254 by placing it into his institution's mailing system on May 8, 2017.    [Dkt. No. 1 at 15].

In the initial petition and a subsequent amendment [Dkt. No. 7 - 8], he claims:

> 1.    Trial counsel were ineffective for failing to develop and present to the jury exculpatory evidence in the form of police property vouchers, cell phone records, a "Certificate of Attendance" to show why he left Virginia, police interview transcripts, automobile titles, and a certificate of analysis showing the results of scientific testing performed on a crowbar.

> 2.    Trial counsel were ineffective for failing to develop and present exculpatory alibi evidence in the form of background checks on prosecution witnesses, records of the victim's cell    phone and information from his contacts, Hall's school attendance records, DNA analysis to show there were multiple contributors to a sample, and police transcripts showing Hall did not lie.

> 3.    Trial counsel were ineffective for failing to solicit, consult with, and present relevant expert and technical witnesses, namely a forensic expert, a DNA analyst, a handwriting expert, a DMV expert, and an expert in the field of cell tower location technology.

> 4.    (A) He was deprived of the right to represent himself; and (B) trial counsel were ineffective for failing to follow the court's instructions to inform him of that right.

---

[2] In his petition, Hall states that was represented by public defenders Joyce Weddle and Althea Mease during pre-trial proceedings and at trial and by public defender W. McMillan Powers on direct appeal. Pet. ¶ 16 [Dkt. No. 1]. Throughout his petition, Hall does not assign the alleged errors to either counselor specifically, alleging that the errors were committed by "counsel(s)." See id.

5.    Trial counsel were ineffective for failing to object to false testimony that a crowbar was found in his vehicle, that he never provided the police with certain car titles, and that he changed his story while talking to the police.

6.    (A) Trial counsel were ineffective for failing to object to and challenge the chain of custody of a crowbar allegedly found in his vehicle; and (B) he was prejudiced by the cumulative effect of this and other instances of ineffective assistance.

7.    Trial counsel were ineffective for failing to object to and challenge the gathering, testing and admission of DNA comparison sample evidence on the ground that both the source and the handwriting expert's evidence were unreliable.

8.    The Commonwealth violated his right to due process by convicting him of a crime he did not commit on the basis of insufficient evidence.

9.    The Commonwealth violated his constitutional right against the admission and use of hearsay testimony to convict him of a crime he did not commit.

10.   Trial counsel were ineffective for failing to investigate, develop and present mitigating evidence and favorable witnesses at sentencing.

11.   Appellate counsel was ineffective for failing to raise, argue and exhaust in the Supreme Court of Virginia the trial court's commission of constitutional error by admitting hearsay evidence in the form of a receipt for ammunition.

On August 4, 2017, respondent filed a Rule 5 Answer and a Motion to Dismiss the petition, along with a supporting brief and exhibits, and provided petitioner with the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1995) and Local Rule 7(K). [Dkt. No. 11 - 14].    After receiving an extension of time, petitioner filed a reply on September 11, 2017.

[Dkt. No. 24].    Accordingly, this matter is now ripe for disposition.

## II. Exhaustion and Procedural Default

Several of Hall's claims and portions of claims are procedurally barred from federal review on the merits. Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court.    28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987); Rose v. Lundy, 455 U.S. 509 (1982).    To comply with the exhaustion requirement, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).    Thus, a petitioner convicted in Virginia first must have presented the same factual and legal claims raised in his federal habeas corpus application to the Supreme Court of Virginia on direct appeal or in a state habeas corpus petition.    See, e.g., Duncan v. Henry, 513 U.S. 364 (1995).

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000).    "The procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim." Id. at 288 (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)). Thus, an unexhausted claim that would be defaulted if presented in state court is deemed to be simultaneously exhausted and procedurally barred from federal review.    Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990).

Portions of claims 1, 2, 3, 5, 7, 9 and 10 of this petition, and all of claims 4(A) and 11, are procedurally defaulted from federal review pursuant to this rule.    Hall did not raise claims 4(A) and 11 in his state habeas corpus proceeding. Resp. Ex. I.    In addition, as to claim 1, Hall did

not argue that trial counsel were ineffective for failing to present exculpatory evidence to the jury in the form of records of his cell phone or a certificate of analysis showing the results of scientific tests performed on the crowbar. As to claim 2, he made no argument in the Virginia courts that counsel were ineffective for failing to develop and present as alibi evidence cell phone records for and information from some people Britt telephoned or a DNA analysis to show there were several contributors to a DNA sample. As to claim 3, Hall presented no argument in his state habeas petition that counsel were ineffective for failing to develop and present testimony from a forensic expert, a DNA analyst, a handwriting expert, or an expert in cell tower location technology. In claim 5 in state court, Hall did not argue that counsel were ineffective for failing to object to testimony that Hall did not turn over certain car titles to the police. As to claim 7, Hall contended in the state action that counsel were ineffective for failing to challenge the gathering, testing and admissibility of the handwriting expert's evidence on different factual bases than he argues here. As to claim 9, Hall made no argument in the state tribunal that admission of the victim's hearsay statements violated his rights under the Confrontation Clause. As to claim 10, Hall argued in the state proceeding only that counsel were ineffective for failing to prepare adequately for sentencing by investigating and developing mitigating evidence regarding his earlier life; he did not argue as he does here that counsel was ineffective for failing to present such evidence, nor did he name specific witnesses he now asserts counsel should have called.

All of the foregoing unexhausted claims and portions of claims would be procedurally barred if Hall were to attempt to present them to the Supreme Court of Virginia now. See Va. Code §8.01-654(A)(1) (stating that Virginia habeas petitions must be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal in state court has expired, whichever is

8

later); id. §8.01-654(B)(2) (stating that a claim that could have been raised in earlier habeas proceeding is barred as successive). As a result, all are now procedurally defaulted.

Federal courts may not review barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris v. Reed, 489 U.S. 255, 260 (1989). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman v. Thompson, 501 U.S. 722, 753-54 (1991); Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990). Importantly, a court need not consider the issue of prejudice in the absence of cause. See Kornahrens, 66 F.3d at 1359 (4th Cir. 1995).

In his reply to the Motion to Dismiss, Hall does not directly address the cause and prejudice analysis with respect to his procedurally defaulted arguments. Instead, he seems to suggest that the respondent's position as to the default of his claims is factually and legally incorrect. [Dkt. No. 27, Petitioner's Response at i- iv]. Such an argument is unavailing, as is Hall's position that his claims should be reviewed in their entirety because he desires to return home to his family. Id. at iii. The sole argument in Hall's reply which, if construed liberally, could be interpreted as an effort to show cause and prejudice is a vague reference to his having received assistance from an inmate law clerk. Id. Because Hall makes no effort to explain how this circumstance caused the procedural default of any of his claims and subclaims, it does not suffice to render those arguments federally cognizable.

Lastly, the rule of Martinez v. Ryan, 566 U.S. 1 (2012) does not excuse the procedural default of the unexhausted portions of Hall's claims of ineffective assistance of trial counsel. In Martinez, the Supreme Court created a narrow exception to the rule announced in Coleman by holding that "inadequate assistance of counsel [or no counsel] at initial review proceedings may

9

establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel." Id. at 9. Here, however, the unexhausted arguments Hall makes are not entirely new claims, but rather are attempts to expand the federal record to include additional factual support for the claims he raised in the state habeas corpus proceeding. Courts have recognized that "Martinez does not directly provide the authority for a petitioner to expand the record in order to develop facts that could have been presented in the state court proceeding." Fielder v. Stevenson, 2013 WL 593657 at *4 (D. S.C. Feb. 14, 2013). The Supreme Court's decision in Cullen v. Pinholster, 563 U.S. 170 (2011) "plainly bans" an "attempt to obtain review of the merits of claims presented in state court in light of facts that were not presented in state court [and] Martinez does not alter that conclusion." Moore v. Mitchell, 708 F.3d 760, 785 (6th Cir. 2013). Lastly, Martinez does not overcome the procedural default of Claim 11 of this petition because the Supreme Court has expressly declined to extend its holding to allow a federal court to reach a procedurally barred claim that an appellate lawyer provided ineffective assistance. Davila v. Davis, 137 S. Ct. 2058, 2065 (2017).

### III. Merits Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudication is contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Whether a state court decision is "contrary to" or "an unreasonable application of" federal law requires an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable

facts." Id. at 413. Under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). Thus, "[t]he question under the AEDPA is not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Mandrigan, 550 U.S. 465, 673 (2007). "As a condition for obtaining habeas corpus [relief] from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). "If this standard is difficult to meet–and it is–'that is because it was meant to be.'" Burt v. Titlow, 134 S.Ct. 10, 16 (2013) (quoting Richter, 562 U.S. at 102).

When a federal habeas petitioner challenges the reasonableness of the factual basis for a state conviction, the AEDPA "requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" Schriro, 550 U.S. at 473-74. Under the AEDPA standard, "[t]he focus of federal court review is now on the state court decision that previously addressed the claims rather than the petitioner's free-standing claims themselves." McLee v. Angelone, 967 F.Supp. 152, 156 (E.D. Va. 1997), appeal dismissed, 139 F.3d 891 (4th Cir. 1998).

### IV. Analysis

#### A. Ineffective Assistance of Counsel Claims

In most of Hall's cognizable claims, he argues that he received ineffective assistance of counsel for various reasons. To establish ineffective assistance of counsel, a petitioner must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the

defendant." Strickland v. Washington, 466 U.S. 668, 687 (1984). Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also, Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (stating that a reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis"); Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994) (opining that a court must "presume that challenged acts are likely the result of sound trial strategy."). The two prongs of the Strickland test are "separate and distinct elements of an ineffective assistance claim," and a successful petition "must show both deficient performance and prejudice." Id. at 233. Therefore, a court need not review the reasonableness of counsel's performance if a petitioner fails to show prejudice. Quesinberry v. Taylore, 162 F.3d 273, 278 (4th Cir. 1998).

Claim 1: In the exhausted portions of Claim 1, Hall argues that counsel were ineffective for failing to develop and present to the jury exculpatory evidence in the form of police property vouchers related to the location of the crowbar, records of Britt's cell phone, a "Certificate of Attendance" issued by Hall's school to show why he left Virginia on April 15, 2011, police interview transcripts, and automobile titles showing that Britt's vehicles were never his. The Supreme Court of Virginia found that these assertions satisfied neither the "performance" nor the "prejudice" prong of the Strickland test.

As to the property vouchers, Hall argues that a police property voucher appearing to list items seized from Britt's home and a police report detailing items seized from Hall's vehicle in Florida included an item described as a "black automotive type crowbar," and that together they proved that the crowbar was found at Britt's home and not in his car. Hall contended that such a revelation at trial would have undermined the Commonwealth's theory that he used the crowbar to kill Britt. The Supreme Court of Virginia found that this argument satisfied neither the

12

"performance" nor the "prejudice" prong of the Strickland test for the following reasons:

> The record, including the trial transcript, demonstrates that Detective M. Luck testified to searching petitioner's vehicle in Florida and finding the crowbar. Detective Luck authenticated a picture showing the crowbar in petitioner's vehicle. Petitioner does not allege he alerted counsel that the picture might be inaccurate or fabricated. Under the circumstances, counsel could have reasonably believed any apparent discrepancies between the voucher and the report were, at most, a clerical error that did not warrant further investigation or presentation to the jury.

> Additionally, petitioner failed to show that, had counsel pursued the issue, counsel might have effectively impeached Luck's description of where he discovered the crowbar. Standing alone, the seeming disagreement between the voucher and the report would not have materially discredited Luck's testimony in light of the picture confirming the crowbar was in petitioner's car. Indeed, petitioner has not proffered how Luck might have responded if asked to reconcile the voucher and the report. Nor has petitioner suggested counsel's further investigation of those documents would have yielded information proving Luck's testimony or the picture false. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Hall v. Warden, supra, slip op. at 2.

Hall next argues that counsel should have introduced Britt's cell phone records to show that the phone was used between April 11 and 15, 2011, the period during which the indictment alleged he killed Britt. He claims this would have contradicted the testimony of five witnesses who stated they last saw Britt on April 11, 2011. The Virginia Supreme Court found that this argument was without merit because the records "arguably suggested [Hall] was using Britt's phone." Id., slip op. at 3. It explained:

> The record, including the trial transcript and the phone records, demonstrates the Commonwealth's theory was that petitioner killed Britt due to soured business dealings, disposed of Britt's body, and fled to Florida. Although the phone records indicate

13

Britt's cell phone was used after he was last seen on April 11, 2011, the records also arguably suggested [Hall] was using Britt's phone. One portion of the records states two calls were placed from Britt's phone at approximately 7:00 a.m. on April 15, 2011, the day [Hall] left his girlfriend's house in Chesapeake, Virginia and drove to Florida. An accompanying map indicated the pair of calls were placed from a road relatively near [Hall's] girlfriend's house at around the same time [Hall] was traveling that road en route to Florida. The map also showed the location of Britt's home, miles from where his cell phone was used on the morning of April 15. Accordingly, counsel reasonably determined presenting the phone records could inculpate, rather than exculpate, petitioner. See Lewis v. Warden, 274 Va. 93, 116, 645 S.E.2d 492, 505 (2007) (counsel is not ineffective for failing to present evidence that has the potential of being "double-edged."). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Hall v. Warden, supra, slip op. at 3.

As to the "Certificate of Attendance" from Hall's ministerial school, the Virginia Supreme Court observed that rather than cross-examine Pastor Irby, counsel moved to exclude his testimony on several grounds, and found that counsel reasonably could have concluded that doing so was "the best way to insulate [Hall] from the . . . prejudicial effect" of having the jury hear that Hall had lied about going to the Middle East. Moreover, "it was largely irrelevant whether [he] in fact missed or attended class." Id., slip op. at 6.

As to the police interview transcripts, Hall argued that counsel was ineffective for failing to use a transcript of his interview with a detective to refute the detective's testimony that he "changed his story." The Supreme Court of Virginia noted that counsel objected unsuccessfully to the detective's testimony, and Hall "had not described with any specificity how counsel could have used the interview transcript to refute" the characterization that he had "changed his story." Id., slip op. at 7.

As to the automobile titles, which Hall claims would have proven that the victim's vehicles were never his, the Virginia Supreme Court noted that the Commonwealth's theory was that Hall had misappropriated the titles from the victim, and that "on their face, the titles in the trial records and that petitioner provides do not reflect the nuances of the business relationship [Hall] claims he had with Britt or confirm [Hall's] explanation for possessing the titles." Moreover, Hall had not claimed that he or any other witness "would have been willing to testify and provide appropriate context for the information [he] claim[ed] the titles convey[ed]." Id., slip op. at 8.

The foregoing determinations by the Supreme Court of Virginia were not contrary to or based on an unreasonable application of controlling federal principles. Strickland, supra. Federal law recognizes that counsel "need not raise every possible claim to meet the constitutional standard of effectiveness." United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014). Instead, counsel is "permitted to set priorities, determine trial strategy, and press those claims with the greatest chance of success." Id. Tactical decisions lie solely within the province of counsel, and "[c]ounsel is not ineffective merely because he overlooks one strategy while vigilantly pursuing another." Williams v. Kelly, 816 F.2d 939, 950 (4th Cir. 1987). In assessing whether alleged omissions by counsel constituted ineffective assistance, federal courts bear in mind that "[a] fundamental reality of trial practice is that often, a weak witness or argument is not merely useless but, worse than that, may detract from the strength of the case by distracting from stronger arguments and focusing attention on weaknesses." United States v. Terry, 366 F.3d 312, 318 (4th Cir. 2004) (internal quotation marks omitted). Here, all of the shortcomings alleged by Hall in Claim 1 fall within this category. Accordingly, the Virginia court's dismissal of the exhausted portions of Claim 1 may not be altered. Williams, 529 U.S. at 412-13.

Claim 2: In the exhausted portions of Claim 2, Hall contends that his counsel provided ineffective assistance by failing to perform a reasonable investigation to develop and present exculpatory alibi evidence in the form of background checks on some prosecution witnesses, Hall's own school attendance logs, and police transcripts showing that Hall did not lie. To the extent that Hall faults counsel for failing to introduce Hall's school records and police transcripts, this claim is duplicative of allegations made in Claim 1 and must be rejected for the same reasons discussed above. As for Hall's argument that counsel rendered ineffective assistance by failing to conduct criminal background checks on five prosecution witnesses who testified that they last saw Britt alive on April 11, 2011, the Supreme Court of Virginia found that the claim satisfied neither the "performance" nor the "prejudice" prong of the Strickland analysis because Hall failed to proffer any beneficial information the proposed background checks might have produced. As a result, he failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Hall v. Warden, supra, slip op. at 3.

Under federal law, "an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced." Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996); see also, Goins v. Warden, Perry Corr. Inst., 576 F. App'x 167, 173 (4th Cir. June 18, 2014). Because Hall made no such proffer, the Supreme Court of Virginia's dismissal of his claim regarding the lack of background checks was both factually reasonable and in accord with applicable federal authority, and the claim thus must be dismissed. Williams, 529 U.S. at 412-13.

Claim 3: In the exhausted portion of Claim 3, Hall argues that his counsel were ineffective for failing to solicit, consult with, and present a DMV expert. He contends that such an expert could have examined the titles of vehicles Hall allegedly misappropriated and would

16

have concluded that Hall was fully entitled to possess them. The Supreme Court of Virginia found no merit to this contention, as follows:

> The Court holds that this claim satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner has not identified a specific expert, employed with the DMV or otherwise, that counsel might have secured to interpret the titles. Nor has petitioner proffered any evidence indicating such an expert would have in fact reached the conclusions petitioner posits. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. See Muhammad v. Warden, 274 Va. 3, 19, 646 S.E.2d 182, 195 (2013) (rejecting claim that counsel was ineffective for not securing the assistance of an expert witness because petitioner did not identify an expert counsel might have consulted or proffer what information an expert would have provided).

Hall v. Warden, supra, slip op. at 4.

The foregoing determination was a reasonable application of the Strickland principles. In general, courts "are reluctant to find ineffective assistance based upon complaints regarding uncalled witnesses." Lenz v. True, 370 F.Supp.2d 446, 479 (W.D. Va. 2005). A petitioner cannot show that he was prejudiced by the absence of a witness' testimony unless he demonstrates "not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." Alexander v. McClotter, 775 F.2d 595, 602 (5th Cir. 1985). Thus, where a petitioner fails to proffer precisely what testimony a missing witness would have provided and to supply an affidavit verifying that proffer, he does not meet his burden to demonstrate that counsel's performance was ineffective. See Makdessi v. Watson, 682 F. Supp. 2d 633, 654 (E.D. Va. 2010). Because the Supreme Court of Virginia's holding was factually reasonable and in accord with these controlling federal principles, its determination may not be disturbed. Williams, 529 U.S. at 412-13.

17

Claim 4: In the exhausted portion of Claim 4, Hall asserts that his counsel provided ineffective assistance by failing to follow the court's instructions to inform him of his right to self-representation. The Supreme Court of Virginia rejected this argument:

> Petitioner claims he believed he could not represent himself because, during his preliminary hearing, the judge said "do you have counsel . . . can you afford counsel . . . or would you . . . no, I'm not going to have that in my courtroom . . . I will assign Ms. Mease as counsel and she will explain it to you." In an affidavit, petitioner states it was not until after trial that he learned of his right to represent himself. Petitioner contends that, if he had represented himself, he would have done numerous things to benefit his defense that his counsel neglected.
>
> The Court holds that [this] claim . . . fails to satisfy the "performance" prong of the two-part test enunciated in Strickland. Petitioner proffers no evidence the trial court expressly directed counsel to discuss with petitioner his right to self-representation. Nor does petitioner allege he ever attempted to broach the subject with counsel following the preliminary hearing or that he did anything that might have given counsel the timely impression petitioner was interested in representing himself. Petitioner's affidavit describes only one pre-trial meeting with counsel a "few weeks" after his preliminary hearing, where "there was no talk about self-representation." Additionally, immediately before trial, petitioner assured the trial court he was satisfied with counsel's services to that point. Accordingly, petitioner has not alleged facts indicating counsel unreasonably neglected to discuss with petitioner the possibility of representing himself. Thus, petitioner has failed to demonstrate that counsel's performance was deficient.

Hall v. Warden, supra, slip op. at 6-7.

Federal law has long recognized that conclusory allegations that a petitioner has been convicted in violation of the Constitution do not entitle him to habeas corpus relief in the absence of specific facts sufficient to warrant such relief. Marslin v. Schmucker, 89 F.2d 765, 767 (4th Cir. 1937); McCurdy v. Commonwealth, 348 F.Supp. 720 (W.D. Va. 1972). In addition, declarations in open court that a defendant is satisfied with his counsel's efforts "carry a strong

presumption of veracity" under federal law, and "the subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Because the Supreme Court of Virginia's holding was factually reasonable and in accord with these controlling federal principles, the same result must obtain here. Williams, 529 U.S. at 412-13.

Claim 5: In one exhausted portion of Claim 5, Hall argues that counsel provided ineffective assistance by failing to object to false testimony that a crowbar was found in his vehicle. He contends that such testimony was false because the crowbar actually was found in the decedent's home. The Supreme Court of Virginia found that this argument satisfied neither prong of the Strickland test because, as explained above in connection with Claim 1, counsel reasonably could have believed that Detective Luck found the crowbar in petitioner's vehicle, and petitioner failed to proffer any evidence that counsel might have used to succeed in establishing that the testimony about the crowbar was false. For the reasons discussed above, the rejection of this contention by the Supreme Court of Virginia was factually reasonable and in accord with Strickland, supra.

In the other exhausted portion of Claim 5, Hall asserts that counsel rendered ineffective assistance by failing to use a transcript of his interview with a detective to refute the detective's claim that Hall "changed his story." After observing that Hall "provide[d] what appears to be a partial transcript of the relevant interview," the Supreme Court of Virginia determined that:

> this . . . claim . . . satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that Detective P. Grover interviewed petitioner several days after Britt went missing. At trial, Detective Grover recounted portions of the interview, including petitioner's explanation for why he had been in Britt's home and what he claimed to have done while there. Detective Grover stated that petitioner eventually "changed his story" regarding which areas of Britt's home he had entered.

> Counsel objected unsuccessfully to the detective's
> characterization, and petitioner has not described with any
> specificity how counsel could have used the interview transcript to
> refute that characterization. Thus, petitioner has failed to
> demonstrate that counsel's performance was deficient or that there
> is a reasonable probability that, but for counsel's alleged errors, the
> result of the proceeding would have been different.

Hall v. Warden, supra, slip op. at 7.

The foregoing holding is not contrary to established federal law. As the Virginia court observed, counsel did object, albeit unsuccessfully, to the detective's statement that Hall "changed his story," and Hall offers no facts to show how counsel's use of the interview transcript would have altered that result. Marslin, 89 F.2d at 767. Accordingly, the claim must be dismissed. Williams, 529 U.S. at 412-13.

Claim 6: In Claim 6, Hall first asserts that counsel provided ineffective assistance by failing to challenge the chain of custody of the crowbar. He argues that by doing so counsel could have established that the crowbar actually was found in the decedent's home rather than in Hall's vehicle. The Supreme Court of Virginia rejected this contention because "counsel could have reasonably believed Detective Luck found the crowbar in [Hall's] vehicle, and petitioner has not proffered any evidence counsel night have successfully used to establish otherwise." Hall v. Warden, supra, slip op. at 7. For the reasons previously discussed in connection with Claim 1, this determination was both factually reasonable and in accord with Strickland, supra.

Hall also argues in Claim 6 that the cumulative effect of counsels' asserted failures to present exculpatory evidence denied him effective assistance. The Supreme Court of Virginia found no merit to this position on the authority of Lenz v. Warden, Sussex I, 593 S.E.2d 292, 305 (Va. 2004) ("Having rejected each of petitioner's individual claims, there is no support for the proposition that such actions when considered collectively have deprived petitioner of his constitutional right to effective assistance of counsel."). It is likewise established under federal

law that the cumulative effect of non-errors does not amount to error. See Fisher v. Angelone, 163 F.2d 835, 852 (4th Cir. 1998) (where it is determined that none of counsel's actions amounted to constitutional error, "it would be odd, to say the least, to conclude that those same actions, when considered collectively," deprived defendant of a fair trial). The Supreme Court of Virginia's rejection of the second portion of Claim 6 thus is factually reasonable and comports with federal principles, and must be allowed to stand. Williams, 529 U.S. at 412-13.

Claim 7: In the exhausted portion of Claim 7, Hall contends that counsel rendered ineffective assistance by failing to challenge the gathering, testing and admissibility of DNA comparison sample evidence because the source of the victim's DNA sample was unreliable. Specifically, Hall argues that the testimony of a technician who collected a toothbrush and a razor from the decedent's home was improper and inadmissible because she stated that she collected items that she thought belonged to Britt without any personal knowledge that those items in fact were his or were used exclusively by him. The Supreme Court of Virginia held that this claim satisfied neither prong of the Strickland test for the following reasons:

> [I]n the course of describing her collection of evidence from Britt's home, the forensic technician testified she collected items she believed to be Britt's because she could not collect DNA from Britt's person. The technician explained she collected the only toothbrush and the only shaving razor on the sink in the master bathroom of Britt's home. At no point did the technician testify she knew the razor or the toothbrush were Britt's. Accordingly, counsel could have reasonably believed the technician permissibly explained why she collected the toothbrush and razor despite that she implicitly conveyed her belief the items were Britt's. See Woodfin v. Commonwealth, 236 Va. 89, 95, 372 S.E.2d 377, 380-81 (1988) (explaining how evidence inadmissible for one purpose may be admissible for another); cf. Weeks v. Commonwealth, 248 Va. 460, 477, 450 S.E.2d 379, 390 (1994) (otherwise inadmissible hearsay statements are admissible to explain the conduct of the person who heard them, especially when such evidence is offered to show an officer's reason for arresting a specific individual or pursuing [a] certain investigation).

Hall v. Warden, supra, slip op. at 9.  It is likewise established under federal law that evidence that is otherwise inadmissible may be admitted "for another, permissible purpose."  United States v. Mitchell, 587 F. App'x 70, 71 (4th Cir. 2014).  Because the Supreme Court of Virginia's holding thus was factually reasonable and in accord with applicable federal principles, the same result is compelled here.  Williams, 529 U.S. at 412-13.

Claim 10: In the exhausted portion of Claim 10, Hall asserts that counsel were ineffective for failing to investigate and to develop mitigating evidence in preparation for sentencing.  Hall suggests that such efforts by counsel would have informed the jury that he had mentored young people, was involved in a church, had joined the ministry, had provided support to his sister and mother, had owned businesses that provided jobs to many people, and had a wife and family. He argues that but for counsel's failure to bring out these points, the jury might have imposed a lower sentence.  The Supreme Court of Virginia found that this claim satisfied neither prong of the Strickland analysis for the following reasons:

> Petitioner does not name any witness counsel should have spoken with in preparation for petitioner's sentencing nor does petitioner proffer anyone was willing to testify on his behalf during the sentencing phase. Likewise, petitioner does not describe how counsel might have presented the mitigating evidence petitioner identifies without the aid of witness testimony. To the extent petitioner contends counsel should have called him to testify to his own good deeds and redeeming qualities, counsel could have reasonably concluded the jurors would find such testimony distasteful or disingenuous given that they had just convicted petitioner of murdering his business associate, ostensibly for pecuniary gain.

Hall v. Warden, supra, slip op. at 12.  As the Virginia court reasonably found, Hall failed to demonstrate that counsel's performance was deficient or that but for the alleged errors, the outcome of the sentencing would have been different.  Accordingly, its rejection of this claim

was in accord with <u>Strickland</u>, and must be allowed to stand.

**B. Due Process Claims**

<u>Claim 8</u>: In his eighth claim, Hall contends that his right to due process was violated when he was convicted of a crime he did not commit on the basis of insufficient circumstantial evidence.   When he made this same argument on direct appeal, the Court of Appeals cited <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) in recognizing that a reviewing court must ask only "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (emphasis in original).   <u>Hall v. Commonwealth</u>, <u>supra</u>; Resp. Ex. C at 13. It observed that under Virginia law, "[i]n homicide cases, the *corpus delicti* must consist of proof (1) of the victim's death, and (2) that it resulted from the criminal act or agency of another."   <u>Epperly v. Commonwealth</u>, 224 Va. 214, 229, 294 S.E.2d 882, 891 (1982).   The *corpus delicti* may be proven by circumstantial evidence. <u>Id.</u>   The appellate court then conducted a thorough analysis of the evidence as described throughout this Memorandum Opinion and concluded that "[a]mple circumstantial evidence supports the jury's conclusion that the victim was deceased and that [Hall] was the person who killed him." It also determined that the Commonwealth's evidence "was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that [Hall] was guilty of first-degree murder."   <u>Hall v. Commonwealth</u>, <u>supra</u>; Resp. Ex. C at 14.   Because the Supreme Court of Virginia refused further review of this determination without explanation, the reasoning of the Court of Appeals is imputed to it.   See <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).

On federal habeas review of a claim challenging the sufficiency of the evidence supporting a state conviction, a federal court is required to give deference to findings of fact made by state trial and appellate courts.   28 U.S.C. § 2254(d).   It is prohibited from either "consider[ing] anew

23

the jury's guilt determination" or "replac[ing] the state's system of direct appellate review." Wright v. West, 505 U.S. 277, 292 (1992). Instead, it must determine only whether the trier of fact made a rational decision to convict. Herrera v. Collins, 506 U.S. 390, 402 (1993). Here, for the reasons expressed in the Court of Appeals' opinion, it is apparent that a rational trier of fact could have found Hall guilty of Britt's first-degree murder. See Jackson, 443 U.S. at 319. Accordingly, the state courts' denial of relief on Hall's challenge to the sufficiency of the evidence was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts, and the same result is compelled here. Williams, 529 U.S. at 412-13.

Claim 9: In his ninth claim before this Court, Hall asserts that the Commonwealth violated his constitutional right against the admission and use of hearsay testimony to convict him of a crime he did not commit. As noted above, when he challenged the admission of hearsay evidence on direct appeal he argued only that it violated Virginia's hearsay rule; he made no mention of a violation of his rights under the Confrontation Clause. Resp. Ex. G at 24-27. Accordingly, that aspect of his claim is procedurally defaulted.

To the extent that Hall alleges that he was prejudiced by the admission of a receipt for ammunition over his hearsay objection, his claim states no basis for federal habeas corpus relief. "A state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held 'in custody in violation of the Constitution or laws or treaties of the United States.'" Billotti v. Legursky, 975 F.2d 113, 119 (4th Cir. 1992). Therefore, "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," Bates v. Lee, 308 F.3d 411, 420 (4th Cir. 2003), quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991), and "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

24

## V. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss this petition will be granted, and the petition will be dismissed with prejudice by an appropriate Order and judgment to be issued with this Memorandum Opinion.

Entered this _27th_ day of _December_ 2017.

Alexandria, Virginia

_____/s/_____
Leonie M. Brinkema
United States District Judge